AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
Central District of California

**LODGED**
CLERK, U.S. DISTRICT COURT
6/9/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: ___MMC___ DEPUTY

United States of America

v.

WRACKKIE QUIOGUE,

Defendant(s)

Case No. 2:25-MJ-03526-DUTY



## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of June 8, 2025, in the county of Los Angeles in the Central District of California, the defendant violated:

*Code Section*

26 U.S.C. § 5861(d)

*Offense Description*

Possession of an Unregistered Destructive Device

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
Complainant's signature

_, Special Agent Michael A. Montevidoni_
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: June 9, 2025

Judge's signature

City and state: Los Angeles, California

Hon. Jacqueline Chooljian, U.S. Magistrate Judge
*Printed name and title*

AUSA: David C. Lachman (x5564)

## AFFIDAVIT

I, Michael A. Montevidoni, being duly sworn, declare and state as follows:

### I. INTRODUCTION

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and have been so employed since July 2015. I am currently assigned to the Los Angeles Field Division and in the Certified Explosives Specialist program.

2. I completed the 12-week Criminal Investigator Training Program and the 12-week Special Agent Basic Training at the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia. I also received specialized training while attending the academies at FLETC concerning violations of the Gun Control Act within Title 18 of the United States Code and violations of the National Firearms Act within Title 26 of the United States Code. That specialized training covered topics such as surveillance, interviewing, warrant writing, evidence handling, arrest procedures, search procedures, and testifying in court.

3. In addition to general law enforcement training including on criminal statutes, I have received specialized training in conducting criminal and explosive and destructive device investigations, amongst other specialized weapons training, and have consulted with my colleagues who have many years of experience investigating weapon related crimes. Within ATF's Certified Explosives Specialist Program, I have completed courses through ATF's National Center for Explosives Training in

Huntsville, Alabama which include Certified Explosives Specialist Basic Training, Advanced Disposal Techniques, Post-Blast Investigations and Homemade Explosives.

## II. **PURPOSE OF AFFIDAVIT**

4.   This affidavit is made in support of a criminal complaint against, and arrest warrant for, Wrackkie Quiogue ("QUIOGUE") for a violation of 26 U.S.C. § 5861(d) - Possession of an Unregistered Destructive Device.

5.   The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and does not purport to set forth all my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only, all amounts or sums are approximate, and all dates and times are on or about those indicated.

## III. **LEGAL BACKGROUND**

6.   Title 26, United States Code, Section 5861(d) provides that "[i]t shall be unlawful for any person . . . to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." Title 26, United States Code, Section 5871 further provides that "[a]ny person who violates or fails to comply with any provision of this

chapter shall, upon conviction, be fined not more than $10,000, or be imprisoned not more than ten years, or both."

7. Destructive devices are considered firearms under Title 26, United States Code, Section 5845(a)(8).

8. Under Title 26, United States Code, Section 5845(f), "[t]he term 'destructive device' means . . . (1) any explosive, incendiary . . . bomb . . . or similar device . . . and (3) any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraph[] (1)."

9. Based on my training and experience, I know that to constitute a functioning incendiary device, the device must (1) be a breakable container; (2) contain a flammable substance; and (3) include a source of ignition.

10. Based upon my training and experience, I am familiar with devices commonly known as "Molotov cocktails," which are incendiary devices. Molotov cocktails typically consist of a bottle or some type of container which can hold an ignitable fluid or liquid. Once such a bottle or container is filled with an ignitable fluid or liquid, a cloth-type material is usually packed as a wick in the opening of the bottle or container. When the wick is ignited, the ignitable fluid or liquid within the container frequently ignites as well. Often, the container is broken after it is thrown or dropped, which causes the ignitable liquid inside to disperse and causes a fire to spread.

## IV. SUMMARY OF PROBABLE CAUSE

11. On June 8, 2025, Los Angeles Police Department ("LAPD") officers responded to protests in an area of downtown Los Angeles, California, and observed an individual, later identified as QUIOGUE, holding a Molotov cocktail, which is a destructive device. LAPD officers pursued and arrested QUIOGUE and recovered the Molotov cocktail and a lighter.

## V. STATEMENT OF PROBABLE CAUSE

12. Based on my review of law enforcement reports and video footage, and from speaking with other law enforcement personnel, I know the following:

    a. On June 8, 2025, crowds gathered at various locations in Los Angeles, California, within the Central District of California, to protest immigration detentions by U.S. Immigration and Customs Enforcement. At approximately 12:00 p.m., LAPD officers responded to crowds and reports of civil disorder in the area near the Edward R. Roybal Federal Building in Los Angeles, California.

    b. At approximately 1:30 p.m., unidentified individuals in the crowd began throwing objects, including rocks and bottles, at LAPD officers.

    c. At approximately 2:00 p.m., LAPD declared an unlawful assembly and gave orders for the crowd to disperse, but the crowd did not disperse.

    d. At approximately 4:15 p.m., an individual on a motorcycle drove into LAPD officers, injuring one officer. Additionally, unidentified individuals in the crowd began

launching projectiles and commercial grade fireworks at LAPD officers.

13. Based on my discussions with LAPD Major Crimes Division Officer Torres, review of an arrest report documenting LAPD's encounter with QUIOGUE, and review of bodycam video from two of the arresting LAPD officer, I know the following:

    a. At approximately 5:00 p.m., LAPD Officer Bojorquez, who was stationed at the Roybal Federal Building to control the crowd, identified an individual in the crowd, later identified as QUIOGUE, manipulating an object in his hand, causing LAPD Officer Bojorquez to advise other LAPD officers to keep an eye on QUIOGUE.

    b. LAPD Officer Bojorquez heard someone call out "Molotov cocktail" and observed QUIOGUE with a bottle in his hand. LAPD Officer Bojorquez described the bottle as a clear bottle with a yellow rag sticking out of it.

    c. Due to the fear that QUIOGUE would light the Molotov cocktail and throw it at officers, LAPD officers approached QUIOGUE. During their approach, QUIOGUE threw the Molotov Cocktail into the air and attempted to flee. LAPD officers were able to subdue and arrest QUIOGUE.

    d. During the arrest, LAPD officers observed QUIOGUE holding a lighter in his right hand. LAPD officers recovered the lighter and the remnants of the Molotov cocktail as evidence.

14. I have reviewed body-worn camera video from LAPD Officer Bojorquez and LAPD Officer Jurisaga, who were both

present and involved with the encounter and arrest of QUIOGUE. According to my review of the bodycam video, an unidentified LAPD officer yelled "Molotov," pointing at QUIOGUE, who then turns his back holding an object consistent in appearance to a Molotov cocktail. QUIOGUE attempted to flee past LAPD officers holding the Molotov cocktail in his left hand. LAPD officers pursued QUIOGUE. As the LAPD officers got closer to QUIOGUE, he threw the Molotov cocktail into the air before LAPD officers arrested him. A photograph of QUIOGUE with the Molotov cocktail is depicted below:



15. Based on my review of the body-worn camera video, I observed LAPD Officer Jurisaga recover the yellow piece of cloth which was part of the Molotov cocktail and state that she could smell it. The bodycam video also showed the recovery of the

remnants of the Molotov cocktail. An unidentified LAPD officer who assisted in recovering the Molotov cocktail stated that he (referring to QUIOGUE) broke it when he threw it.

16. On June 8, 2025, a Los Angeles Fire Investigator function tested the lighter recovered from QUIOGUE's hand during his arrest. The lighter functioned as designed and produced a flame.

17. On June 8, 2025, ATF Bomb Technician Michael Cote and I inspected the remnants of the Molotov cocktail device, observing a broken, clear glass bottle containing clear fluid and a yellow cloth. ATF Bomb Technician Cote collected a sample of the liquid contained within the pieces of broken glass and within the yellow cloth. The sample tested as Ethanol, a flammable liquid. The yellow piece of cloth was soaked in ethanol, acting as a source of ignition.

18. Given that the Molotov cocktail device contained a breakable container, flammable substance and a source of ignition, ATF Bomb Technician Michael Cote and I concluded that the Molotov cocktail constituted a destructive device, pursuant to 26 U.S.C. § 5845(f). Based on my training and experience I also know a Molotov cocktail is a hand-thrown explosive or incendiary weapon which consists of a breakable container with flammable liquid inside and a fuse or wick that after lit can ignite the liquid, thereby meeting the definition of "explosive or incendiary device" under 18 U.S.C. § 232(5).

19. On June 8, 2025, queries were conducted in the National Firearms Registration and Transfer Record ("NFRTR") for

QUIOGUE, using his name, date of birth, address, and social security number. No results were found for any of the QUIROGUE's identifiers in the NFRTR.

20. I have reviewed QUIOGUE's criminal history, which includes felony and misdemeanor convictions, including the following felony convictions:

    a. Take Vehicle without Owner's Consent/Vehicle Theft, in violation of California Vehicle Code Section 10851(A) in the Superior Court for the State of California, County of Orange, Case Number 19CF3281 on or about March 6, 2020.

    b. Grand Theft, in violation of California Penal Code Section 487(A), in the Superior Court for the State of California, County of Orange, Case Number 19CF3281 on or about March 6, 2020.

21. QUIOGUE is presently in state custody.

## VI. CONCLUSION

22. For all the reasons described above, there is probable cause to believe that Wrackkie QUIOGUE violated 26 U.S.C. § 5861(d) Possession of an Unregistered Destructive Device.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 9th day of June,
2025.

_____
HONORABLE JACQUELINE CHOOLJIAN
UNITED STATES MAGISTRATE JUDGE